IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARILYN WALLACE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO: 1:07-cv-01837-RMU |
| ) | |
| UNITED STATES, et al. ) | |
| ) | |
| Defendant. ) | |

# PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND TO TRANSFER VENUE

Plaintiff Marilyn Wallace files this opposition to Defendant's motion filed December 7, 2007 to dismiss and transfer venue. Defendant's motion to dismiss should not be granted. The U.S. District Court for the District of Columbia has jurisdiction to adjudicate this case.

## QUESTIONS PRESENTED

1. Does Plaintiff have a claim under 26 U.S.C. §7433?

2. Can Plaintiff, a resident of Buffalo (Johnson County) in the state of Wyoming, file this case in the U.S. District Court for the District of Columbia?

## ARGUMENT

**I.     THIS COURT SHOULD GRANT PLAINTIFF'S CLAIM FOR DAMAGES**

1. According to 26 U.S.C. §7433, "defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000, in the case of negligence) or the sum of—

   **(1)** actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and

   **(2)** the costs of the action"

2. For Plaintiff to seek an amount equal to $100,000 in damages, that would not be contrary to 26 U.S.C. §7433 which permits a maximum of $100,000 in the case of negligence. Plaintiff may seek that amount, and the Court has the prerogative to grant the maximum damages or a lesser amount. Even if the amount of damages has been misstated in Plaintiff's original complaint, doing so would not negate Plaintiff's right to other damages authorized by law, and rightfully deserved by Plaintiff.

A. **Summary of the Facts**

3. On September 25, 2001 the IRS levied Plaintiff's Michigan State Teacher's Pension in the amount of $945.54 per month. This continued until June 2006. Plaintiff allegedly had a tax debt of $6,573.00 (Exhibit D). However, a total of $53,895.78 (Exhibits E & F) was illegally removed from her pension. In addition, $3,449.10 was levied from Plaintiff's social security (Exhibit H).

4. The facts are undisputed: Plaintiff filed tax returns (late) showing she owed about $10,000. The tax service did not challenge her self-assessment and in fact accepted it.

5. The levy on her pension recouped all the tax debt quickly. But the tax service kept the levy on her pension. Eventually, the tax collectors took from her $53,895.78 according to Mrs. Wallace computation (Exhibits E & F). An excessive and illegal levy took place. The amount illegally seized may be disputed. Defendant does not dispute the facts that the levy was excessive or unauthorized. Mrs. Wallace made dozens of phone calls and sent dozens of letters to the collection department – all of which were ignored.

B. **<u>Defendant did commit misconduct in the collection of a federal tax, and therefore Plaintiff has a valid claim under 26 USC §7433</u>**

6. Defendant claims that "taxpayers cannot seek damages under section 7433 for an improper assessment of taxes." Neither party is contesting the assessment of taxes. That issue is done and over with. Neither party disputes the calculation of the tax liability as both parties agree on Mrs. Wallace's tax returns. This case is not about tax refund under 26 U.S.C. §7422. This case is about damages resulting from Defendant's misconduct in the collection of a federal tax.

7. To support its argument, Defendant cited *Buaiz v. United States*, 471 F. Supp. 2d 129 (D.D.C. 2007). In that case, Plaintiff Mr. Buaiz made allegations "that the IRS imposed tax liens to collect taxes that Mr. Buaiz did not actually owe, that the IRS failed to release those liens despite Mr. Buaiz's requests that it do so, and that the IRS failed to develop proper procedures governing the collection of unpaid taxes. Indeed, by failing to address them in its papers, Defendant implicitly concedes that these counts allege actionable misconduct in connection with the collection of income taxes. See Def.'s Mem. at 9-10. Taking these allegations in the light most favorable to Mr. Buaiz, the Court concludes that they state a valid claim under §7433." *Id.* at 137.

8. In the present case, Plaintiff Mrs. Wallace is similarly situated on these specific issues. The IRS had collected more taxes from her than she actually owed (Exhibits D, E, and F); the IRS failed to release the lien in a timely manner and did so only about three years late; the IRS did not follow proper procedures and did commit misconduct in the collection of federal tax; and Defendant implicitly conceded these allegations by failing to address them. Taking these facts in the light most favorable to Mrs. Wallace, the Court has to conclude that Plaintiff has a valid claim under §7433.

9. Defendant claims that Plaintiff must show that the IRS acquired Plaintiff's assets by acting illegally or by using improper methods. To prove a claim for improper collection practices, the taxpayer must demonstrate that the IRS did not follow the prescribed methods of acquiring assets. 28 U.S.C.A. § 2410; *Brewer v. C.I.R.*, 430 F. Supp. 2d 1254, 1260 (S.D. Ala. 2006). The facts and the law prove that Defendant did pursue illegal and improper collection activities.

10. Plaintiff alleges deficiency in notice and Defendant's violation of 26 USC §6303. "An unlawful act in connection with 'notice and demand' could trigger § 7433 liability." *Miller v. United States*, 66 F.3d 220, 222 (9th Cir.1995).

11. According to 26 USC §6331(b), "a levy shall extend only to … obligations existing at the time thereof." Moreover, 26 USC §6331(c) states that a levy continues "until the amount due … is fully paid" – but not after that period.

12. The IRS Notice of Levy (Exhibit D) states that the lien is "for the amount that is owed." The Notice was for the amount that is owed ($6,573.00). The IRS had confiscated $53,895.78 (Exhibits E and F) – which is far more than what is allegedly owed ($6,573.00) and stated on that Notice of Levy. <u>There was no notice to levy the $47,322.78 which was levied in addition to the $6,573.00 listed in the Notice.</u> Moreover, Exhibit D clearly states that "this levy won't attach funds in IRAs … or any other retirement plans in your possession or control, unless it is signed in the block to the right." As Exhibit D clearly shows, the Notice of Levy was never signed "in the block to the right." Yet, the IRS levied Plaintiff's pension in violation of guidelines stated on its own form. Also, the IRS did not extend to Plaintiff an opportunity for a hearing before the levy, as stated in 26 USC §6330 and §6320.

13. The levy against Plaintiff's pension and social security was conducted against IRS own guidelines, illegally, and in violations of Plaintiff's due process. A levy for more than the alleged liability, for a day more than necessary, for a dollar more than necessary, or by methods not properly authorized is improper and illegal. Plaintiff had exhausted her administrative remedies. In this case, should not the Court grant Plaintiff all amounts taken from Plaintiff's pension and social security plus damages for such illegal tax collection?

14. If the issue – as Defendant claims – is one of tax assessment, has Defendant mailed Plaintiff a notice of deficiency and afforded the opportunity for review in the Tax Court in compliance with 26 USC §6213(a)?

15. Defendant admitted liability at least twice. On May 25, 2006, Mrs. Wallace met with IRS Agent Thomas Bentley in Billings, MT. The agent immediately ended the levy. Such action was a clear IRS admission that the levy was already in excess of $1.00 and that the garnishment was illegal for at least one day. On March 16, 2007 the IRS sent Plaintiff two checks totaling $10,954.18 (Exhibit A). This is clearly an unmistakable acknowledgment by the IRS that the levy was excessive or unauthorized in the amount which they levied. There is $36,368.60 that needs to be released plus interest for the entire period of the unauthorized levy. The only issue remaining is the amount of damages.

**C. Damages**

16. In Defendant's motion, Defendant has agreed that a taxpayer may collect damages for wrongful collection actions under 26 USC §7433. It has been shown herein that Defendant did act illegally

and pursued wrongful collection measures. As a result of Defendant's actions, Plaintiff did sustain actual and economic damages.

17. Marilyn Wallace is sole supporter of herself and main financial supporter of her husband. The illegal levy consisted of 55% of her pension and all of her social security benefit --- despite the fact that 26 USC §6331(h) states that a "levy shall attach up to 15 percent of any specified payment due to the taxpayer." First, the IRS levied what Plaintiff allegedly owed. Then, the IRS kept the levy for approximately three more years. Such excessive and illegal levy caused financial hardship to Plaintiff and her family.

18. Plaintiff and her husband are elderly, unable to work. They live in an isolated area far from relatives and friends. To stop the robbery of her pensions, Plaintiff had to hire tax professionals to assist her. The extent and amount of the levy caused Plaintiff to suffer mental anguish, anxiety, and emotional distress. As a result, Plaintiff succumbed to new ailments, such as high blood pressure (Exhibit G and H).

19. According to Plaintiff's letter to her attorney (Exhibit H), Plaintiff says: "I am now almost 73 years old and I have wasted so much time of the past 12 years answering their mail that life has literally passed me by during that time. I estimate 2,000+ hours of my life wasted – equivalent of 250 eight-hour days of working in an office…. All the time wasted and money taken represents countless lost opportunities. I wanted to become more proficient in music, but never did…. I never got the horse I wanted due to lack of money… My little sister was ill during most of this time. I wanted to take her to a clinic that might have helped her, but the money I would have used to do this was stolen from me. Too late now. She died in April of this year."

20. For how long shall Defendant's harassment of Plaintiff continue and at what price? Defendant did not prove that it acted legally to levy Plaintiff's assets. Even if did did, Defendant levied more than what was necessary and their action proved their wrongdoing. Then, for what reason and based on what legal justification does Defendant continue to refuse rectifying its wrongdoing?

21. This Court should grant Plaintiff damages according to 26 U.S.C. §7433 and other relief the Court deems appropriate.

## II. THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA HAS PROPER JURISDICTION TO HEAR THIS CASE

22. In making a determination on whether to dismiss a case, the court must "take all the allegations in the complaint as true, and view the complaint in the light most favorable to the plaintiff." *Martinez v. Am. Airlines, Inc.*, 74 F.3d 247, 248 (11th Cir.1996) (quoting *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir.1993). The court must treat the complaint's factual allegations-including mixed questions of law and fact-as true and draw all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C.Cir.2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C.Cir.2003).

23. "The United States may be named a party in any civil action or suit <u>in any district court</u>… (1) to quiet title to … real or personal property on which the United States has or claims a mortgage or other lien." 28 USC §2410. When the taxpayer challenges the procedural regularity of the tax lien and the procedures used to enforce the lien, and not the validity of the tax assessment, sovereign immunity is waived and the district court does have jurisdiction over a quiet title action. *Brewer v. C.I.R.*, 430 F. Supp. 2d 1254, 1255 (S.D. Ala. 2006).

24. In this case, Plaintiff is challenging the procedural regularity of a tax lien. Then one of the issues presented is that who has title to the $47,322.78 levied without a notice? Defendant has already acknowledged lack of title to said property by returning $10,954.18 (Exhibit A) to Plaintiff. Defendant has offered no evidence that it has title to the remainder, or even challenged Plaintiff's right to it. Plaintiff demands the rest of her money and damages.

25. Defendant claims that "a suit by an individual for a tax refund can be maintained only in the district where a plaintiff resides." Defendant has misunderstood Plaintiff's complaint. The issue of venue that Defendant has raised deals with tax refund suits. This case is not about tax refund under 26 U.S.C. §7422. This case is about illegal levy and damages under 26 U.S.C. §7433. The issue herein is not about a "refund" of Plaintiff's "alleged overpayment to the United States" as Defendant claims. Plaintiff did not voluntarily overpay. The issue is Defendant's illegal levy and misconduct. Defendant's motion to transfer venue is inapplicable to this civil action.

26. According to 28 U.S.C. §1406(b), "nothing … shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue." Since Defendant has not contested venue for the proper action brought by this case, Defendant's failure amounts to a waiver. Defendant's motion is not "sufficient objection to the venue" and should not impair the jurisdiction of this Court.

27. The U.S. District Court for the District of Columbia has jurisdiction over any case filed in a federal court, particularly if against a federal agency. The tax refund suit which the Defendant bases its case on is the alternative method to dispute a tax liability. No such dispute exists in this case. No one disagrees with Mrs. Wallace's self-assessment. She has not filed an amended tax return or any aspect of a Tax Refund Suit.

28. Plaintiff is entitled to all the protections and immunities under the law. If Plaintiff does not have an attorney to represent her in her district, and if Plaintiff is incapable of representing herself before a court, then it would be in the interest of justice to hear Plaintiff's case in any jurisdiction where she can be represented and heard.

29. "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394; *Louisville & N. R. Co. v. Schmidt*, 177 U.S. 230, 236, 44 S. L. ed. 747, 750, 20 Sup. Ct. Rep. 620; *Simon v. Craft*, 182 U.S. 427, 436, 45 S. L. ed. 1165, 1170, 21 Sup. Ct. Rep. 836. "It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552. (1965). "The right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Matthews v. Eldridge*, 424 U.S. 319 (1976).

30. Plaintiff stated very clearly her cause of action: unauthorized and excessive levy for $47,322.78 wrongfully taken, plus interest, damages, costs, etc. She has shown that illegal acts were committed against her monthly for three years. She has clearly listed the improper collection activities. The collection department did not follow the "prescribed methods of acquiring assets" because they did not stop the levy when all the tax debt was collected.

31. The government would save much money by keeping this case in the District of Columbia. The IRS had already twice admitted liability in this case. The law is most clear: the government will pay all of Plaintiff's cost and attorney's fees when she prevails. What rightfully belongs to Plaintiff must be given to Plaintiff. The longer this case is delayed, or delayed by being transferred

to another jurisdiction, the more expense the government will incur, and the longer Plaintiff's rights will be delayed. Defendant is unlikely to prevail under any circumstance.

32. Even if the Court still considers venue to be improper, improper venue does not require this Court to dismiss the case.  A district court may transfer a case to the Claims Court "if it be in the interest of justice." *Hondros v. United States Civil Service Com'n*, 720 F.2d 278, 299 (3d Cir.1983). In *Hondros*, the court stated that it is impossible to "conclude ... that Congress intended to handcuff the federal courts by prohibiting them from transferring a case improperly filed in the district courts to the Claims Court when the interests of justice so require." Id. at 299 n. 41. *Krapf v. U.S.,* 604 F. Supp. 1164 (D.C.Del., 1985).

For reasons listed herein, the U.S. District Court for the District of Columbia has a jurisdiction to adjudicate this case and grant Plaintiff damages and other relief the Court deems appropriate.

Respectfully submitted,

 /s/  Elias Aoun_____                    Date: December 25, 2007
**Elias Aoun, Esq. Bar Number 479315**
**1730 N. Lynn St., # A-22**
**Arlington, VA 22209-2004**
**Cell Phone 202-257-7796**

# Certificate of Service

I certify that *Plaintiff's Response to Defendant's Motion to Dismiss and to Transfer Venue*, along with Exhibits A, D, E, F, G, and H were served on December 25, 2007 on the following by electronic service:

                                          ARI D. KUNOFSKY
                                        Trial Attorney, Tax Division
                                        U.S. Department of Justice
                                        Post Office Box 227
                                        Ben Franklin Station
                                        Washington, DC 20044


                                        /s/  Elias Aoun
                                        Elias Aoun

**Exhibit A**



Form 668-A(c)
(Rev. January 2001)

Department of the Treasury — Internal Revenue Service

**Notice of Levy**

Exhibit D

DATE: 05/14/2001

ORS
MAY 14 2001

TELEPHONE NUMBER OF IRS OFFICE:
TOLL FREE
WI

SEQNUM 00005
1-800-829-7650

REPLY TO:
AUTOMATED COLLECTION SYSTEM
P.O. BOX 9949
OGDEN, UT 84409

TO: P    DPC05

MICHIGAN PUBLIC SCHOOL EMPLOYEES
RETIREMENT SYSTEM
PO BOX 30171
LANSING MI    48909

NAME AND ADDRESS OF TAXPAYER:
MARILYN J WALLACE
PO BOX 733
BUFFALO WY    82834-0733336

IDENTIFYING NUMBER(S):
WALL  E  04    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

THIS ISN'T A BILL FOR TAXES YOU OWE. THIS IS A NOTICE OF LEVY WE ARE USING TO COLLECT MONEY OWED BY THE TAXPAYER NAMED ABOVE.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| CIVPEN | 12-31-1985 | $ 515.00 | $ 159.49 | $ 674.49 |
| CIVPEN | 12-31-1986 | $ 500.00 | $ 155.39 | $ 655.39 |
| CIVPEN | 12-31-1987 | $ 500.00 | $ 155.39 | $ 655.39 |
| CIVPEN | 12-31-1988 | $ 500.00 | $ 155.39 | $ 655.39 |
| CIVPEN | 12-31-1989 | $ 500.00 | $ 155.39 | $ 655.39 |
| CIVPEN | 12-31-1990 | $ 500.00 | $ 155.39 | $ 655.39 |
| CIVPEN | 12-31-1991 | $ 500.00 | $ 155.39 | $ 655.39 |
| CIVPEN | 12-31-1992 | $ 500.00 | $ 155.39 | $ 655.39 |
| CIVPEN | 12-31-1993 | $ 500.00 | $ 155.39 | $ 655.39 |
| CIVPEN | 12-31-1994 | $ 500.00 | $ 155.39 | $ 655.39 |

THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS' RETIREMENT PLANS, OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL UNLESS IT IS SIGNED IN THE BLOCK TO THE RIGHT. ➤

Total Amount Due ▶ $ 6,573.00

We figured the interest and late payment penalty to _____06/12/2001_____.

The Internal Revenue Code provides that there is a lien for the amount that is owed. Although we have given the notice and demand required by the Code, the amount owed hasn't been paid. This levy requires you to turn over to us this person's property and rights to property (such as money, credits, and bank deposits) that you have or which you are already obligated to pay this person. However, don't send us more than the "Total Amount Due."

**Money in banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must be held for 21 calendar days from the day you receive this levy before you send us the money. Include any interest the person earns during the 21 days. Turn over any other money, property, credits, etc. that you have or are already obligated to pay the taxpayer, when you would have paid it if this person asked for payment.**

Make a reasonable effort to identify all property and rights to property belonging to this person. At a minimum, search your records using the taxpayer's name, address, and identifying number(s) shown on this form. Don't offset money this person owes you without contacting us at the telephone number shown above for instructions. You may not subtract a processing fee from the amount you send us.

To respond to this levy:
1. Make your check or money order payable to United States Treasury.
2. Write the taxpayer's name, identifying number(s), kind of tax and tax period shown on this form, and "LEVY PROCEEDS" on your check or money order (not on a detachable stub).
3. Complete the back of Part 2 of this form and mail it to us with your payment in the enclosed envelope.
4. Keep Part 1 of this form for your records and give the taxpayer Part 3 within 2 days.

If you don't owe any money to the taxpayer, please complete the back of Part 2, and mail that part back to us in the enclosed envelope.

| Signature of Service Representative | Randy K Harper | Title | Chief, Collection Branch |

**Exhibit E**



STATE OF MICHIGAN
DEPARTMENT OF MANAGEMENT & BUDGET
LANSING

JENNIFER M. GRANHOLM
GOVERNOR

LISA WEBB SHARPE
DIRECTOR

December 13, 2005

MARILYN JOYCE WALLACE
P O BOX 733
BUFFALO WY 82834

XXX-XX-3904

Dear Ms. Wallace:

I am writing follow-up to our conversation earlier today and your November 22, 2005 letter concerning your pension benefit and payments being sent to the Internal Revenue Service (IRS).

A review of your retirement records shows that we began withholding $945.54 per month from your pension benefit effective September 2001, and continue to do so today; ORS is sending this amount to the IRS @ P.O. Box 9949, Ogden, UT 84409. Through December 2005, the total of payments sent to the IRS is $49,168.08 (52 months @ $945.54).

Sorry for the delay in responding to your concerns. If you have questions, contact the office at the address below.

Sincerely,

*Richard Pennington*

Richard Pennington
Retirement Analyst

RCP/rcp



GENERAL OFFICE BUILDING • P.O. BOX 30171 • LANSING, MICHIGAN 48909-7671
www.michigan.gov/ors • (800) 381-5111 • (517) 322-1116 (FAX)
Printed by members of:

**Exhibit F**

<u>Plaintiff's handwritten note</u>

After the date of this letter, the <u>confiscation</u> was ongoing for <u>5 more</u> months.

5 × $945.54 = $4,727.70

$49,168.08
+ $4,727.70
$53,895.78 total

The mention of "this letter" in this handwritten note refers to Exhibit E.

Prescription #:        6774321
Prescription For:      WALLACE, MARILYN
Pharmacist's Name:     DAN DAVIS
Pharmacy Phone:        (307)672-1810
This drug expires:     11/16/2008

**Exhibit G**

RETAIL PRICE:   $49.99
DRUG NAME:   **AMLODIPINE 5MG    TAB MYLA**
GENERIC NAME:   AMLODIPINE (am-LOE-di-peen)

COMMON USES: This medicine is a calcium channel blocker used to control high blood pressure or angina (chest pain). Reducing high blood pressure helps prevent strokes, heart attacks and kidney problems.
BEFORE USING THIS MEDICINE: Some medicines or medical conditions may interact with this medicine. INFORM YOUR DOCTOR OR PHARMACIST of all prescription and over-the-counter medicine that you are taking. DO NOT TAKE THIS MEDICINE IF YOU ARE TAKING ANOTHER MEDICINE THAT CONTAINS AMLODIPINE. ADDITIONAL MONITORING OF YOUR DOSE OR CONDITION may be needed if you are also taking other medicines for high blood pressure (e.g., beta-blockers, diuretics), intravenous (IV) calcium, or other medicines for chest pain such as nitroglycerin. DO NOT START OR STOP any medicine without doctor or pharmacist approval. Inform your doctor of any other medical conditions including heart disease, liver disease, allergies, pregnancy, or breast-feeding. USE OF THIS MEDICINE IS NOT RECOMMENDED if you have a history of low blood pressure. Contact your doctor or pharmacist if you have any questions or concerns about taking this medicine.

HOW TO USE THIS MEDICINE: Follow the directions for using this medicine provided by your doctor. This medicine may be taken on an empty stomach or with food. STORE THIS MEDICINE at room temperature between 59 and 86 degrees F (15 and 30 degrees C) in a tightly-closed container, away from heat and light. CONTINUE TO TAKE THIS MEDICINE even if you feel well. Do not miss any doses. Most people with high blood pressure do not feel sick. IF YOU MISS A DOSE OF THIS MEDICINE and remember it the same day, take it as soon as possible. If you do not remember until the next day, skip the missed dose and go back to your regular dosing schedule. Do not take 2 doses at once.

CAUTIONS: DO NOT TAKE THIS MEDICINE if you have had an allergic reaction to it or are allergic to any ingredient in this product. DO NOT STOP TAKING THIS MEDICINE without discussing it with your doctor. IF YOU ARE TAKING THIS MEDICINE FOR ANGINA, it will not relieve the pain of an acute attack if taken at the time of the acute attack. It prevents or reduces the number of angina attacks only if you take it on a regular schedule. THIS MEDICINE MAY CAUSE DIZZINESS. Do not drive, operate machinery, or do anything else that could be dangerous until you know how you react to this medicine. SIT UP OR STAND SLOWLY from a seated or lying position to allow your body time to adjust. WHEN YOU BEGIN USING THIS MEDICINE, it may cause a headache, which usually lasts for a short time. With continued use of the medicine, headache usually becomes less noticeable. LIMIT INTAKE OF ALCOHOL while taking this medicine. BEFORE YOU BEGIN TAKING ANY NEW MEDICINE, either prescription or over-the-counter, check with your doctor. This includes cough and cold products or diet aids because they may contain ingredients that could increase your heart rate or blood pressure. Ask your pharmacist about the safe use of these products. WHILE YOU ARE USING THIS MEDICINE, brush and floss your teeth carefully to reduce swelling and tenderness of your gums. CAUTION IS ADVISED WHEN USING THIS MEDICINE IN THE ELDERLY because they may be more sensitive to the effects of this medicine. FOR WOMEN: IF YOU PLAN ON BECOMING PREGNANT, discuss with your doctor the benefits and risks of using this medicine during pregnancy. IT IS UNKNOWN IF THIS MEDICINE IS EXCRETED in breast milk. DO NOT BREAST-FEED while taking this medicine.
POSSIBLE SIDE EFFECTS: SIDE EFFECTS, that may occur while taking this medicine include nausea, fatigue, weakness,

[MORE]

Follow directions. Do not stop without Dr approval
May cause dizziness
If dizziness occurs, drive with caution.
Check with Dr. before taking any other medicine
May cause headache. Consult Dr if severe.
Promptly report unusual symptoms/effects to Dr

TxMs (Transaction Message)
NO TRANSMISSION ERRORS
BSM:mm16:

**Exhibit H**

Post Office Box 733
Buffalo, Wyoming [82834]
November 21, 2007

Mr. Elias Aoun
P.O. Box 12602
Arlington, Virginia [22219]

Dear Mr. Aoun:

      The I.R.S. has been harassing me since early 1996. I am now almost 73 years old and I have wasted so much of the past 12 years answering their mail that life has literally passed me by during that time. I estimate 2,000+ hours of my life wasted--equivalent of 250 eight-hour days of working in an office, except that I did not get paid for all that time and effort. In fact, it was even unproductive for me.

      And then there is the money. They levied my credit union account and then my husband's. They confiscated $53,895.78 from my pension and then they said they "had no record" of taking all that money from me from September 2001 through may 2006, almost five years!! So I had to request a letter from my pension office stating how much they took (copy enclosed). Then they took $3,449.10 out of my social security. More countless hours fighting that.

      All that time wasted and money taken represents countless lost opportunities. I wanted to become more proficient in music, but <u>never did</u>. I think of the hours wasted that I could have used for practicing my music. I never got the horse I wanted due to lack of money and even if I could get it <u>now</u>, I'm getting too old to saddle up and ride it. My little sister was <u>ill</u> during most of this time. I wanted to take her to a clinic that might have helped her, but the money I would have used to do this was stolen from me. Too late now. She died in April of this year.

      I paid an estimated $10,298 to nine different people and/or organizations for help in this matter, including the money I sent to you. I spent at <u>least</u> $600 for office supplies, Making copies, secretarial services, certified mail, etc..

      Most of the time I spent writing letters, making copies, etc. completely wasted because no matter how important and truthful and valid my arguments were, they <u>ignored</u> all of it and more harassment was my reward for this. I have one and a half deep file cabinet drawers stuffed with I.R.S.-related paperwork! I am also enclosing copies of the latest harassments which I received Friday in two separate certified mailings.

Page one of two

I now have high blood pressure. I wonder what caused that! I am enclosing a copy of my medicine paperwork for that condition. I could go on and on. I'm sure I must have forgotten something, there is so much!

If I left out any information or documentation that you would like to have, please let me know.

Sincerely,

*Marilyn Joyce Wallace*

Marilyn Joyce Wallace

Page two of two